[Cite as *State v. Daly*, 2015-Ohio-5034.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO,                                :

    Plaintiff-Appellee,                   :                    CASE NO.   CA2015-06-054

                                              :                    O P I N I O N
  - vs -                                                                12/7/2015
                                              :

AMANDA DALY,                                 :

    Defendant-Appellant.                  :


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2014 JE 52108


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Cornetet, Meyer, Rush & Kirzner Co., LPA, Mark C. Eppley, 123 Boggs Lane, Cincinnati, Ohio 45246, for defendant-appellant


**PIPER, P.J.**

{¶ 1}   Defendant-appellant, Amanda Daly, appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, denying her presentence motion to withdraw her no contest plea.

{¶ 2}   Daly was charged by complaint with failure to send her daughter to school after the child had over 23 unexcused absences from the elementary school in which she was

registered. Daly appeared in court, pro se, and was advised of the charge, as well as her options to plead guilty, not guilty, no contest, or not guilty by reason of insanity. Daly asked the magistrate to explain what a no contest plea entailed, and the magistrate explained the effect of a no contest plea. Daly then asked whether she would be permitted to present information on the charge if she pled no contest, and the magistrate confirmed that Daly would be permitted to provide information. Daly then entered a plea of no contest to the failure to send charge. Daly also signed a Rights and Penalties sheet that explained all of her rights and the possible penalties in regard to the hearing and charge against her.

{¶ 3} During Daly's appearance before the magistrate, and after pleading no contest to the charge, the magistrate heard testimony from a truancy interventionist who was familiar with the facts that gave rise to the complaint, as well as a guardian ad litem (GAL) who had been appointed for Daly's child. The magistrate also questioned Daly, who claimed that the child was being homeschooled and that there was a lack of communication regarding where the child was actually registered to attend school. After considering the testimony, the magistrate found Daly guilty and scheduled a sentencing hearing for the next month.

{¶ 4} Daly failed to appear for sentencing, and a bench warrant was issued. Daly claimed that she believed sentencing was later in the month, and paid a fine to have the warrant recalled. The magistrate rescheduled sentencing for the next month.

{¶ 5} The day before the second sentencing hearing was to occur, Daly filed a motion to withdraw her no contest plea, arguing that she had not been made fully aware of the consequences of a no contest plea. However, at the sentencing hearing, the magistrate declined to hear Daly's arguments regarding her motion, and instead, proceeded to sentence Daly to payment of court costs.

{¶ 6} Daly, who had obtained counsel, then filed a motion to vacate the magistrate's decision, as well as objections to the magistrate's decision. The juvenile court and the

parties agreed that the issue of whether Daly should be permitted to withdraw her no contest plea should be briefed. The juvenile court also scheduled a hearing date, and accepted oral arguments from the parties regarding Daly's motion.

{¶ 7} The juvenile court sustained Daly's objection that the magistrate should have given her a full hearing on her motion to withdraw/vacate her plea. However, the juvenile court determined that it had given Daly a full hearing and proceeded to determine the merits of Daly's motion and the remaining objections. The juvenile court denied Daly's request to withdraw her plea, and overruled Daly's objections. Daly now appeals the juvenile court's decision, raising the following assignment of error.

{¶ 8} THE TRIAL COURT ERRED IN FAILING TO PROVIDE THE APPELLANT WITH A HEARING ON THE APPELLANT'S MOTION TO VACATE HER PLEA OF NO CONTEST PRIOR TO SENTENCING.

{¶ 9} Daly argues in her assignment of error that the juvenile court erred by not granting her motion to withdraw her no contest plea.

{¶ 10} According to Crim.R. 32.1, "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." While a presentence motion to withdraw a no contest plea should be freely and liberally granted, "it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing. Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).

{¶ 11} On review, the trial court's decision will not be reversed absent an abuse of discretion. *State v. Ferrell*, 12th Dist. Madison No. CA2014-07-014, 2015-Ohio-1601, ¶ 11. An abuse of discretion is more than an error of law or judgment, but implies that the trial

court's ruling was arbitrary, unreasonable, or unconscionable. *State v. Wofford*, 12th Dist. Butler No. CA2014-10-210, 2015-Ohio-3708, ¶ 7.

{¶ 12} In reviewing whether the trial court abused its discretion in denying a presentence motion to withdraw a guilty plea, this court considers the following factors: (1) whether the defendant was represented by highly competent counsel, (2) whether the defendant was afforded a complete Crim.R. 11 hearing before entering the plea, (3) whether the trial court conducted a full and impartial hearing on the motion to withdraw the plea, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion set out specific reasons for the withdrawal, (7) whether the defendant understood the nature of the charges and the possible penalties, (8) whether the defendant was possibly not guilty of the charges or had a complete defense to the charges, and (9) whether the state would have been prejudiced by the withdrawal. *Id.* at ¶ 9. No one factor is conclusive in the determination of whether a motion to withdraw should be granted. *State v. Ward*, 12th Dist. Clermont No. CA2008-09-083, 2009-Ohio-1169, ¶ 7.

{¶ 13} After reviewing the factors in turn, we find that the juvenile court did not abuse its discretion in denying Daly's motion to withdraw her plea.

**Whether the Defendant was Represented by Highly Competent Counsel**

{¶ 14} The record reveals that Daly began her representation pro se, but then obtained counsel before filing her motion to vacate her no contest plea. Daly, while not initially represented when making her plea, was informed by the magistrate that she had the right to counsel. Moreover, the Rights and Penalties sheet Daly signed informed her that she had the right to counsel and that a continuance would be granted if she wanted to obtain counsel. Still, Daly chose not to obtain counsel until immediately before she was to be sentenced. Even so, the record is clear that Daly was not represented by counsel at the time

- 4 -

she pled no contest, so that this factor weighs somewhat in her favor.

**Whether the Defendant was Afforded a Complete Crim.R. 11 Hearing Before Entering the Plea**

{¶ 15}   Notwithstanding Daly's choice to proceed pro se, the record indicates that she received a full colloquy advising of the effects of a no contest plea.  Crim.R. 11(E) applies to petty offenses, and provides, "In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty."  "In accepting a plea to a misdemeanor involving a petty offense, a trial court is required to inform the defendant only of the effect of the specific plea being entered."  *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, ¶ 20.

{¶ 16}   According to Crim.R. 11(B)(2), "The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."

{¶ 17}   As required by the rule, the magistrate was required to inform Daly of the effect of a no contest plea.  The magistrate explained,

> no contest would mean that you are not admitting guilt or innocence, you are admitting, you are acknowledging the facts alleged in the complaint and if I believe that the facts alleged in the complaint gave rise to this charge then the Court would make a guilty finding.  If I believe that the facts alleged in this complaint do not give rise to this allegation then the case would be dismissed, so you are admitting the facts but you are not admitting guilt or - - you are not admitting guilt.

{¶ 18}   The magistrate's description of a no contest plea successfully informed Daly of the effect a no contest plea would have, including that the plea amounts of an admission of the facts alleged in the complaint.  Thus, Daly was fully aware of what her no contest plea would mean in regard to admitting the facts as alleged in the complaint.

{¶ 19} While the magistrate did not inform Daly that the no contest plea could not be used against her in a subsequent civil or criminal proceeding, this omission did not prejudice Daly in the least. *See Jones*, 2007-Ohio-6093 at ¶ 52 (failure "to comply with nonconstitutional rights * * * will not invalidate a plea unless the defendant thereby suffered prejudice. * * * The test for prejudice is whether the plea would have otherwise been made"). If anything, the fact that a no contest plea cannot be used in a subsequent civil or criminal proceeding would make it more likely that Daly would have pled no contest, and she suffered no prejudice by the magistrate neglecting to tell her that the plea of no contest could not be used against her in future proceedings. This is especially true where the Explanation of Rights and Penalties signed by Daly included the language that a no contest plea could not be used against Daly in any subsequent civil or criminal proceedings.

{¶ 20} After reviewing the colloquy, we find that the magistrate successfully informed Daly of the effect of her no contest plea. We would also note, that while not required, the magistrate further informed Daly of constitutional rights she was waiving by virtue of her plea, such as the right to remain silent, the right to a trial where the state would have the burden of proof, and the right to subpoena witnesses. While the magistrate was not required to inform Daly of these rights, the record indicates that the magistrate clearly indicated the rights Daly was waiving by virtue of her plea, as well as the effect the no contest plea would have. Therefore, this factor does not weigh in favor of granting Daly's motion to withdraw her no contest plea.

**Whether the Trial Court Conducted a Full and Impartial Hearing on the Motion to Withdraw the Plea**

{¶ 21} The record indicates that the juvenile court conducted a full and impartial hearing on Daly's motion, even if the magistrate did not. The record is clear that the magistrate did not give Daly a hearing on her motion to withdraw her guilty plea. Even so,

and while the magistrate declined to grant Daly's motion to withdraw her plea and instead recommended a sentence, the law is clear that the magistrate's decision is not effective or a final order until adopted by the juvenile court. Juv.R. 40(D)(4)(a); *In re R.P.B.*, 12th Dist. Warren No. CA2009-07-097, 2010-Ohio-322, ¶ 23. Therefore, the steps taken by the juvenile court after the magistrate's decision, but before it adopted the magistrate's decision regarding Daly's motion to withdraw her no contest plea, indicate that Daly received a full and impartial hearing on her motion.

{¶ 22} The record indicates that the juvenile court permitted Daly to brief the issue of whether she should be permitted to withdraw her no contest plea. While not transcribed, the record also indicates that the juvenile court held hearings to permit the parties to orally argue the points raised in their briefs and to address the court regarding Daly's motion. Although Daly does not refer to any such proceeding as a hearing, the juvenile court did in its written entry. The juvenile court noted in its written decision denying Daly's motion that "this matter came before the Court for hearing on December 29, 2014, February 2, 2015, and March 18, 2015." The record indicates that the hearing on March 18, 2015 was specific to Daly's motion to withdraw her plea, and we will presume the regularity of the juvenile court's statement in the absence of a transcript to indicate otherwise. *See Geico Indemn. Co. v. Alausud*, 12th Dist. Butler No. CA2010-11-315, 2011-Ohio-2599, ¶ 16 (in the absence of a transcript of the proceeding, "we have no choice but to presume the regularity of the trial court's proceedings").

{¶ 23} The juvenile court noted in its written opinion that it did not reach its decision until after a "full and fair consideration of all the *hearings*, a complete review of the case file," and analysis all of the applicable law. (Emphasis added.) As such, the record indicates that the juvenile court afforded Daly with multiple opportunities to address the merits of her motion to withdraw her plea, including a hearing on the issue, and this factor does not weigh

in favor of Daly.

### Whether the Trial Court Gave Full and Fair Consideration to the Motion

{¶ 24} The record also indicates that the juvenile court gave full and fair consideration to the motion. The juvenile court issued a detailed written decision, including a full and accurate recitation of the controlling law. The juvenile court addressed the factors cited above regarding whether to grant a motion to withdraw a plea, and applied the facts fully to the factors. As stated above, the juvenile court did not consider Daly's arguments until it permitted Daly to fully brief the issue and until a hearing was held regarding the motion to withdraw the plea.

{¶ 25} In its written decision, the juvenile court stated that it was "fully briefed on the matter and defense counsel was given a full opportunity to argue his position, both orally and in writing. Further, the Court has reviewed the entire record including the transcript." As such, the record indicates that the juvenile court gave full and fair consideration to Daly's motion to withdraw her no contest plea, and this factor does not weigh in favor of withdrawal.

### Whether the Motion was Made within a Reasonable Time

{¶ 26} "Undue delay between the occurrence of the alleged cause for a withdrawal of a plea and the filing of the motion is a factor adversely affecting the credibility of the movant and militates against the granting of the motion." *Ward*, 2009-Ohio-1169 at ¶ 12.

{¶ 27} The record indicates that Daly did not request to withdraw her no contest plea until the day before her second sentencing date, which was over two months after she entered her plea. Daly was convicted of the charge and failed to appear for her first sentencing hearing, but never asked the magistrate to permit her to withdraw the plea. Daly did not challenge her plea, or move to withdraw it, even when asking the magistrate to recall the bench warrant or upon asserting to the court that she misunderstood the original sentencing date. Daly did not ask to withdraw her plea until one day before the second

sentencing hearing, which the juvenile court found to be a "dilatory" act. We agree.

{¶ 28} Additionally, Daly does not explain why she waited until the day before sentencing to move the court to withdraw her plea. Instead, Daly argues in her brief that "it is difficult to argue that the motion was not timely filed when the sentencing itself was set so far in the distance after the finding of guilty." However, the record is clear that the sentencing date was only so far in the future because of Daly's failure to appear on the first sentencing date. Regardless of the reason for the time between the guilty finding and the sentencing, Daly had ample time in which to move the court. Her failure to do so until the day before her second sentencing hearing does not weigh in her favor.

### Whether the Motion Set Out Specific Reasons for the Withdrawal

{¶ 29} Daly claimed that the reason she wanted to withdraw her no contest plea was because she believed that she would be permitted to provide evidence and testimony to prove that she did not fail to send her child to school. Specifically, Daly claims that she believed that she would be permitted to "provide information to the Court as to why the facts were incorrect and/or only half accurate."

{¶ 30} During the hearing, and after the magistrate fully explained the effect a no contest plea would have, Daly asked the magistrate whether she would have "an opportunity to present the information that I have either way regardless of what I plead to?" The magistrate answered, "yes," and Daly proceeded to plead no contest.

{¶ 31} The record indicates that Daly was fully informed during the plea hearing and in writing the effect of her plea, including that she was admitting to the truth of the facts included in the complaint. Even so, and despite no indication that Daly was led astray by the magistrate or the state as to the effect of her plea, the magistrate permitted Daly to testify and to explain why the child had not been attending school. As such, and even if Daly was confused as to whether she would be permitted to present information, the record indicates

that the magistrate allowed Daly an opportunity to testify and present information despite her no contest plea. As such, this factor does not weigh in favor of Daly.

### Whether the Defendant Understood the Nature of the Charges and the Possible Penalties

{¶ 32} The record clearly indicates that Daly understood the nature of the charges and the possible penalties. The magistrate fully explained the charge, including that the complaint alleged that Daly had failed to send her child to school pursuant to the mandatory attendance laws of Ohio. The magistrate informed Daly of the possible penalties, including that she could be ordered to pay a bond and sentenced to a fine or community service, and that future truancy findings could result in a charge of contributing to the delinquency of a minor.

{¶ 33} Daly acknowledged her understanding each time the magistrate explained the charges or penalties, and when asked if she had any questions, Daly responded, "no." As such, the record is clear that Daly understood the charge against her, as well as the possible penalties, and this factor weighs against granting Daly's motion.

### Whether the Defendant was Possibly Not Guilty of the Charges or Had a Complete Defense to the Charges

{¶ 34} The record indicates that Daly did not have a complete defense to the charges, and that the evidence, including her own admission, indicated that Daly failed to send her child to school.

{¶ 35} The magistrate heard testimony from the truancy interventionist that Daly's child was registered at Willowville Elementary, and despite some reports that the child was actually attending a different school or was being homeschooled, Willowville did not receive any information indicating that the child was actually in any school during the times she was absent from Willowville. According to the record, the child missed over 23 days at Willowville and had several tardies.

{¶ 36} The interventionist testified that the records included absences between August 26 to September, with a gap between September and April where the child was attending a different school or being homeschooled. The attendance records resumed on April 23 to May 29th once the child was re-enrolled in Willowville. The unexcused absences were therefore recorded between August to September and April to May. The interventionist also testified that the child had several instances of tardiness when she did attend school.

{¶ 37} Daly testified that her child was attending a school for gifted children, and that the child was not applying herself and was falling behind. Daly made the decision to withdraw her child from the gifted school, and then agreed to homeschool the child upon the child's request.[1] Daly testified that she took steps to register the child as being homeschooled, but did not receive any confirmation of the homeschool registration from Clermont County Educational Services. Instead, Daly testified that she assumed it was a "good thing" not to "hear anything from" the educational services agency and that she and her daughter continued homeschooling.

{¶ 38} Daly testified that she re-enrolled her child in Willowville because her daughter was not applying herself to the homeschooling, and that there were a few overlap days once the child was registered until she physically attended class at Willowville. Daly admitted that the child had six unexcused absences from April to May, and five unexcused tardies while the child was registered at Willowville. In her defense, Daly testified that she was a single parent who was in charge of getting all of her children to school, and that she also worked third shift and had no help. She also testified that there may have been times where the child was ill and had a doctor's note, but "the school never received it or I just had my hands full

---

1. The record indicates that Daly or Daly's mother were in charge of homeschooling the child, but questions remained as to whether the curriculum was sufficient or met applicable standards, and whether any schooling was actually occurring during the time the child was with her grandmother.

and it just didn't get done, and that is most definitely my fault."

{¶ 39} Otherwise, Daly tried to defend by stating that the child was always enrolled in school, whether it was the gifted school, homeschool, or Willowville and that any absences were "an error in communication." Also, Daly asserted that the tardies were a result of her juggling her job and trying to get the children to school, or were otherwise the child's fault for not hurrying to class once inside the school building. However, the magistrate heard evidence from the child's GAL that the reason the child was late to school was because she would sleep in the car while Daly worked in "adult entertainment" and then be taken directly to school after spending the night in the car. The GAL also testified that the child may have missed days given that Daly was involved in a car accident driving home from work with the child in the car, and also Daly took the child "on the run" to avoid the child's father gaining custody of the child.

{¶ 40} Based on this evidence, including Daly's own admission that the child had unexcused absences during the time she was enrolled at Willowville, Daly did not have a complete defense, and there is little chance that she would have been found not guilty had a trial occurred. Accordingly, this factor weighs in favor of denying the motion.

### Whether the State Would have been Prejudiced by the Withdrawal

{¶ 41} The state concedes that it would not have been necessarily prejudiced if Daly had been permitted to withdraw her plea. The state did not present any evidence of prejudice, and the juvenile court did not find that the state would have been prejudiced. As such, this factor weighs in favor of Daly.

### Conclusion

{¶ 42} While two of the factors weigh in favor of granting the motion, the majority of factors weigh heavily in favor of denying Daly's request to withdraw her plea. This is especially true where she was fully aware of the effect of her plea, was permitted to offer

information regarding her daughter's attendance, and where the evidence fully supported a guilty finding. After reviewing the record, we find that the juvenile court correctly balanced the factors and did not abuse its discretion in denying Daly's motion to withdraw her plea.[2] As such, Daly's sole assignment of error is overruled.

{¶ 43} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.

---

2. In the alternative, Daly argues that she should be able to withdraw her no contest plea according to Crim.R. 32.1 because a manifest injustice occurred. However, the legal analysis regarding whether a manifest injustice occurred applies only to a request to withdraw a plea once sentence has been imposed. Crim.R. 32.1. Here, Daly requested that her plea be withdrawn, and such motion was denied, *before* she was sentenced by the juvenile court. As such, the proper legal analysis is that stated above regarding a balancing of the factors, not whether a manifest injustice occurred. Even so, there was no manifest injustice in this case where the magistrate fully explained the effect of a no contest plea, and even allowed Daly to testify, present information regarding where the child was attending school, and cross-examine the truancy interventionist. Daly also suggests that this court should consider her request to withdraw her no contest plea as a petition for postconviction relief. However, Daly did not file a petition for postconviction relief, and never appealed her conviction so that the issue would have likely been barred by res judicata. Moreover, the case that Daly cites in support of the proposition that a court may possibly treat a motion to withdraw a plea as a petition for postconviction relief was specific to a "post-sentence motion to withdraw a guilty plea," not a motion to withdraw before sentencing occurred. *State v. Reynolds*, 3d Dist. Putnam No. 12-01-11, 2002-Ohio-2823, ¶ 23.