[Cite as *State v. Valdez*, 2024-Ohio-3357.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-11-015 |
| | : | O P I N I O N |
| - vs - | | 9/3/2024 |
| | : | |
| SIMON PETER VALDEZ, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 22CR013917

Martin P. Votel, Preble County Prosecuting Attorney, and Kathryn M. West, Assistant Prosecuting Attorney, for appellee.

Kirsten Knight, for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Simon Peter Valdez, appeals his conviction in the Preble County Court of Common Pleas following his guilty plea to rape. For the reasons set forth below, we affirm his conviction.

{¶ 2} Appellant was indicted on June 6, 2022, on two counts of rape in violation of R.C. 2907.02(A)(1)(c) and (B), felonies of the first degree, and two counts of gross

sexual imposition in violation of R.C. 2907.05(A)(5) and (C)(1), felonies of the fourth degree. The charges arose out of allegations that appellant engaged in sexual conduct with a woman who was not his spouse and who did not have the ability to resist or whose consent was substantially impaired because of a mental condition, and appellant had reasonable cause to know of the impairment. Appellant admitted to an investigator officer that he and the victim had engaged in oral sex together.

{¶ 3} Appellant was appointed counsel and initially entered a not guilty plea to the charges. On November 22, 2022, at appellant's request, the court appointed new counsel for appellant. Following discovery, the retention of an expert who conducted an independent evaluation of the victim's mental condition, and plea negotiations, the defendant appeared before the trial court on October 9, 2023 to change his plea. Appellant agreed to plead guilty to a single count of rape in violation of R.C. 2907.02(A)(1)(c) in exchange for the remaining offenses being dismissed and the state agreeing to cap its sentence recommendation at nine years. The trial court began its Crim.R. 11 plea colloquy. After the state laid out the agreement and introduced a written plea waiver, the court asked appellant whether the terms in the plea waiver were acceptable to him. The following discussion then occurred:

THE COURT: And are those terms acceptable to you?

[Appellant]: No, sir.

THE COURT: Let me try again –

[Appellant]: I do not accept 'em.

THE COURT: You—okay you do not want to plead today?

[Appellant]: I do, but I would like to address the Court, Sir, please.

THE COURT: Tell your Attorney what you intend to say because I don't want you to say something that might hurt your

interest. So go ahead and talk to [defense counsel].

{¶ 4} Following a conversation between appellant and defense counsel, counsel addressed the court, explaining that appellant had "frustrations regarding prior Counsel and the – the delays that came as a result of that, beginning the case, prior to [his] involvement." Appellant was also unhappy with continuances that happened after his new counsel has been appointed and new counsel had requested an evaluation of the victim. Appellant interrupted his counsel's explanation to ask that he be given new representation.

> [Appellant]: Your Honor, may I speak, please? I wanna get rid of him and I – I need a new lawyer. That's why I need to address the Court.
>
> THE COURT: I'm – I – what reason would you want to . . . have new counsel?
>
> [Appellant]: [I]n May, when I was supposed to have pretrial, he came made a deal to hire the forensic psychologist. I talked to him on that date and he told me it'd be just a minute or two, take patience, never told me that they postponed my trial till this time of year, five months later, I received it through the Court's on the 17th of May.
> . . .
>
> [H]e didn't, tell me about my trial bein' postponed that far, cause I asked him, he said it'd be just a lil' while, just hang tight. . . .
>
> THE COURT: Mr. Valdez . . . I'm going to cut you off because what you're saying is not relevant to what we're doing here today.
>
> [Appellant]: Well, he – so Friday we made the – the meeting –
>
> THE COURT: I'm going to talk to you about, just for a moment, about the hiring of the expert. We have to hire psychological experts all the time . . . and things like that, those people are few and far between anymore, there are not nearly the people who are willing to entertain those kind of evaluations and appear in court as we used to have, and it takes a long time. So that was a request that was made, that was – had nothing

- 3 -

to do with [second appointed counsel].

[Second appointed counsel] is an excellent lawyer, a very ethical lawyer, I've dealt with him for years and years and years, I am not going to grant your request for a new attorney.

[Appellant]:  Well, I'm not finished, Your Honor.

THE COURT:  I – Yes, you are, because it's not relevant to what we're doing here today, Mr. Valdez.  Because either we're going to take a plea *or we're going to set a new trial date*.  And then there will be no pleas taken.  The – this is – I'm not even going to allow the State to make another plea offer because we had jurors set to come in, we had your expert witness that you'd requested who was scheduled to come in, there was a lot of inconvenience, I – because we [were] told that you had – wanted to enter a plea, which is fine, you have every right in the world to enter a plea, you have every right in the world to have a trial, but we're not going to do this yo-yo back and forth anymore.

If you need a couple more minutes to talk to [second appointed counsel] if – about entering the plea today, I'll grant you that.  If you say, "nope, I don't want to enter the plea," we're *going to set a trial date and there will be a trial on that date*, I'm not going to accept a plea to anything other than as charged under the indictment because I – we – we just . . . have to get this case resolved.  You want to get it resolved.  So do I.
. . .

[Appellant]:  [H]e told me Friday, against my will, he talked me into doin' a plea that said you and . . . the DA were on board with a five year, then two hours later, he called the jail for me to call him and told me this deal.  That's where I – where I'm upset.

THE COURT:  So, are you telling me you want a trial?

[Appellant]:  Yes, Sir.

[Second appointed counsel]:  Can we just take a brief moment, Your Honor, so I can speak with him?

THE COURT:  You – you may.

(Emphasis added.)

{¶ 5}    After a brief recess for appellant to speak with his counsel, defense counsel

indicated appellant wished to enter a guilty plea pursuant to the terms of the negotiated plea deal. The court verified with appellant that he wished to enter a guilty plea rather than go to trial as follows:

THE COURT: Is that what you want to do, Mr. Valdez?

[Appellant]: Yes Sir. . . .

THE COURT: I don't want . . . to be argumentative – let – let me tell you how – what I'm thinking. I am not trying to be mean by cutting you off, it's just some things are relevant at a certain point, some things are not. This is a significant step for you with significant consequences and I want to make sure you're doing it with a full understanding and voluntarily with understanding there are likely to be reservations.

So, you're sure you're ready to go forward?

[Appellant]: Yes, sir.

THE COURT: All right. . . . You've had a chance now to review the plea waiver?

[Appellant]: Yes, Sir.

THE COURT: All right. Do you understand all the terms that are in that plea waiver?

[Appellant]: Yes, Sir.

THE COURT: Do you have any questions about it, whatsoever?

[Appellant]: No, Sir.

THE COURT: And, now with additional conversations that you've had with your Attorney, are those terms acceptable to you?

[Appellant]: Yes, Sir.

THE COURT: All right. And you are satisfied with the legal services that you've received from [second appointed counsel]?

[Appellant]: Yes, Sir.

- 5 -

THE COURT: Have you had an adequate amount of time to meet with him in order to discuss your case?

[Appellant]: Yes.

THE COURT: And did he answer any questions that you might've had about your case to your satisfaction?

[Appellant]: Yes, Sir.

THE COURT: And finally, did he share with you the evidence that the State would have presented had there been a trial in your case?

[Appellant]: Yes, Sir.

{¶ 6} Thereafter, the trial court proceeded with the Crim.R. 11 plea colloquy. When asked how he pled to the charge of rape, appellant replied, "Guilty." The trial court accepted appellant's guilty plea and found it was knowingly, intelligently, and voluntarily made with the advice of counsel. The matter was set for sentencing.

{¶ 7} On October 30, 2023, a sentencing hearing commenced. However, at that time, appellant orally requested a withdrawal of his plea. The trial court suspended the sentencing hearing and permitted counsel to file a written motion on behalf of appellant. The motion to withdraw the guilty plea was filed on November 1, 2023, and was supported by a signed letter from appellant.[1] In the motion and attached letter, appellant indicates he is not guilty of the rape and gross sexual imposition offenses, that he has "witnesses who will support that [he is] not guilty of all charges, and that he "felt duress on the date of [his plea . . . to enter the plea."

{¶ 8} A hearing on appellant's motion to withdraw his guilty plea was held on November 2, 2023. Appellant was the only witness to testify at the hearing. He testified he wanted to withdraw his plea because,

---

1. Appellant titled his signed letter "Affidavit of Simon P. Valdez." However, the document was not signed and dated by a notary public, did not bear a notary seal, and did not include a jurat.

> I was not – I was not aware of making a certain deal and then
> it changed. And then when I asked to not sign, I was – I guess
> I was misinformed or misunderstood that we were gonna pick
> a jury at that point and I was dressed like this [in jail attire] and
> I thought if I picked a jury it would be tainted bein' I'm dressed
> like this so I felt coerced to having to sign the paper.

Appellant further indicated that he had "quite a few witnesses to support my claim that I – my innocence." However, on cross-examination, he admitted that he previously told a law enforcement officer that he and the victim had engaged in oral sex. He also admitted that the terms he pled guilty to on October 9, 2023 were the same terms that were presented to him by his counsel via a telephone call on October 6, 2023.

{¶ 9} The trial court took the matter under advisement and, on November 6, 2023, issued a decision denying appellant's motion to withdraw his plea. The court found there was "not a reasonable and legitimate basis for allowing the withdrawal of the plea." Two days later, on November 8, 2023, appellant was sentenced to seven to ten-and-one-half years in prison and was designated a Tier I sex offender.

{¶ 10} Appellant appealed, raising two assignments of error for review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} APPELLANT'S PLEA WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY.

{¶ 13} Appellant argues his plea was not knowing, intelligent, or voluntary because the record reflects that he found the terms of the plea unacceptable and that he entered the plea under duress. Appellant contends the record demonstrates that he only entered the guilty plea because he believed a jury trial was to be held that day and he would be required to appear before the jury in jail attire.

{¶ 14} A guilty plea that is not knowing, intelligent, and voluntary violates the Ohio and United States Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179,

- 7 -

citing *Kercheval v. United States*, 274 U.S. 220, 223 (1927). It is the trial court's duty, therefore, to ensure that a defendant "has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244 (1969).

{¶ 15} To ensure that a defendant's guilty plea is knowingly, intelligently, and voluntarily made, the trial court must engage the defendant in a plea colloquy pursuant to Crim.R. 11(C). *State v. Leonicio*, 2023-Ohio-2433, ¶ 33 (12th Dist.). Specifically, the "trial court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses." *State v. Montgomery*, 2016-Ohio-5487, ¶ 41; Crim.R. 11(C)(2)(c). In addition to these constitutional rights, the trial court must determine that the defendant understands the nature of the charge, the maximum penalty involved, and the effect of the plea. *Id.*; Crim.R. 11(C)(2)(a) and (b). "A plea may be involuntary if 'the accused does not understand the nature of the constitutional protections he is waiving . . . or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.'" *Montgomery* at ¶ 42, quoting *Henderson v. Morgan*, 426 U.S. 637, 645, fn. 13 (1976).

{¶ 16} Appellant has not specifically identified any problem in the trial court's Crim.R. 11 colloquy and the record reflects that the trial court complied with the requirements of Crim.R. 11(C) in advising him of the constitutional rights he was waiving and in covering the other nonconstitutional aspects of his guilty plea.

{¶ 17} Additionally, contrary to appellant's assertions, the record of the plea hearing does not indicate that appellant entered his plea under duress or that there was any basis for him to believe that a jury trial would begin immediately—while he was dressed in jail attire—if he did not enter a guilty plea on October 9, 2023. Rather, the transcript demonstrates that appellant was advised by the trial court that if he elected not

to enter a plea, "we're going to set a new trial date" and "we're going to set a trial date and there will be a trial on that date."  The trial court did not state that there would be a trial that day, but rather clearly indicated a future date would be set.

{¶ 18}  After indicating that a trial date would be set if appellant did not wish to enter a plea, the trial court provided appellant with the opportunity to consult with his counsel. Appellant therefore had the opportunity to clear up any confusion he may have had about when a trial would commence if he elected not to enter a guilty plea.  Following his discussion with counsel, appellant indicated to the trial court that he wished to enter a guilty plea to the charge of rape and that the terms of the plea were acceptable to him.

{¶ 19}  As nothing in the record indicates appellant failed to understand the charges he faced, the consequences of his plea, or the rights he was waiving by pleading guilty and nothing in the record indicated appellant was acting under duress at the time he entered his plea, we find that appellant's plea was knowingly, intelligently, and voluntarily made.  Appellant's first assignment of error is overruled.

{¶ 20}  Assignment of Error No. 2:

{¶ 21}  THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW HIS PLEA.

{¶ 22}  In his second assignment of error, appellant contends the trial court abused its discretion in denying his presentence motion to withdraw his guilty plea.  He contends his motion should have been granted where the circumstances demonstrated he felt coerced into entering the plea, he had evidence that he was not guilty of the offenses, and he was prepared to call witnesses who could testify on his behalf.

{¶ 23} Pursuant to Crim.R. 32.1, a defendant may file a presentence motion to withdraw a guilty plea.  *State v. Schwartz*, 2019-Ohio-4912, ¶ 12 (12th Dist.).  "[A] defendant's presentence motion to withdraw a guilty plea should be *freely and liberally*

*granted*." (Emphasis in original.) *State v. Barnes*, 2022-Ohio-4486, ¶ 21, citing *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). However, although freely and liberally granted, that does not mean a defendant possess an absolute right to withdraw a guilty plea prior to sentencing. *Id.* at ¶ 22; *State v. Manis*, 2012-Ohio-3753, ¶ 24 (12th Dist.). "Rather, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Newton*, 2015-Ohio-2319, ¶ 10 (12th Dist.), citing *State v. Witherspoon*, 2010-Ohio-4569, ¶ 8 (12th Dist.).

{¶ 24} "In determining whether to grant a presentence motion to withdraw a guilty plea, the trial court should consider the circumstances surrounding the defendant's plea." *State v. Harris*, 2019-Ohio-1700, ¶ 11 (12th Dist.). Factors to be considered include, but are not limited to, (1) whether the defendant was represented by highly competent counsel; (2) whether the defendant was afforded a complete Crim.R. 11 hearing before entering the plea; (3) whether the trial court conducted a full and impartial hearing on the defendant's motion to withdraw the plea; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion set out specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was possibly not guilty of the charges or had a complete defense to the charges; and (9) whether the state would have been prejudiced by the withdrawal. *State v. Owens*, 2022-Ohio-160, ¶ 30 (12th Dist.), citing *State v. Snider*, 2013-Ohio-4641, ¶ 9 (12th Dist.).

{¶ 25} "No one factor is conclusive in the determination of whether a plea should be allowed to be withdrawn." *State v. Rivera*, 2014-Ohio-3378, ¶ 17 (12th Dist.), citing *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist. 1995). Rather, "[t]he decision to grant or deny a presentence motion to withdraw a guilty plea rests within the sound discretion

of the trial court." *State v. Medina*, 2022-Ohio-1799, ¶ 13 (12th Dist.).  This court will not reverse a trial court's decision denying such a motion absent an abuse of that discretion. *State v. Sales*, 2022-Ohio-4326, ¶ 26.  "An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable."  *State v. Robinson*, 2013-Ohio-5672, ¶ 14 (12th Dist.); *State v. Hancock*, 2006-Ohio-160, ¶ 130.

{¶ 26}  The record reflects that in ruling on appellant's motion to withdraw his guilty plea, the trial court took into consideration each of the nine factors identified above before rendering its decision.  Though the court found that the state would not be prejudiced if it were to grant the motion to withdraw, the remaining factors did not support granting the motion.  The court concluded that "there is not a reasonable and legitimate basis for allowing the withdrawal of [appellant's] plea."  Appellant disagrees with the trial court's determination, arguing he had a legitimate basis for the withdrawal of his guilty plea as he was innocent of the crimes charged, he had witnesses that would testify on his behalf, and he only entered the plea because he "felt coerced" by his belief that he would be tried by a jury while dressed in jail attire on the day of the plea proceedings.

{¶ 27} As discussed in our resolution of appellant's first assignment of error, with respect to appellant's belief that he would be tried by a jury the same day his plea was set to occur, there is no evidence in the record to support his belief.  As the trial court noted, appellant

> was expressly told that if he did not want to enter his plea, "we're going to set a trial date and there will be a trial on that date." . . . Also, it was obvious that no jurors were present and, had he raised the issue of having to proceed immediately to trial with the Court or his counsel, he would have been immediately disabused of that notion.  There was no confusion as to whether a trial would have commenced on October 9 had [appellant] not gone forward with his plea.

{¶ 28} With respect to appellant's claim of innocence, the trial court noted that this was nothing more than a "bald assertion" that appellant was not guilty. Appellant did not identify any specific evidence or identify any witnesses that would support his claimed innocence. Further, appellant's claim of innocence was contradicted by his acknowledgement that in an interview with investigating officers, he admitted to engaging in sexual conduct with the victim. Appellant later made the same admission during his presentence investigation interview. Additionally, a psychologist's report from an evaluation of the victim indicated that the victim was unable to consent to sexual conduct due to her mental condition.

{¶ 29} The record reflects that appellant was provided with a full Crim.R. 11 plea colloquy prior to entering his plea, and he understood the nature of the charges and the possible penalties he faced. He was represented by highly competent counsel and he had the opportunity to discuss any questions or concerns he had about the plea with counsel. Appellant indicated he was satisfied with counsel's services, that counsel answered any questions he had to his satisfaction, that counsel shared the evidence the state would have presented had there been a trial, and that he had an adequate amount of time to meet with counsel. The trial court noted that those portions of second appointed counsel's work that were visible to the court were "skillful and vigorous."

{¶ 30} The trial court further found that appellant had not filed his motion to withdraw in a reasonable time. As the court noted, the reasons appellant identified for wanting to withdraw his plea—his belief that he would be tried by a jury on the same day he was to enter the plea while dressed in prison attire and his claim of innocence—all existed on the day he entered his plea. Nonetheless, appellant waited until October 30, 2021, 21 days after he entered his guilty plea, to orally request that he be permitted to withdraw his plea. As the trial court noted, "there was no justification offered for the timing

of the request."

{¶ 31} Under the circumstances presented in this case, we find that the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty plea. The record supports the trial court's determination that there is not a reasonable and legitimate basis for allowing the withdrawal of appellant's guilty plea. Appellant's second assignment of error is overruled.

{¶ 32} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.